Jones, J.
 

 Neither in this nor in the appellate court have counsel for appellant challenged the regularity of the official proceedings culminating in the forfeited land sale for the payment of delinquent taxes; however, the appellant attacks the finding of the board under Section 5718-1, General Code, contending that it is arbitrary and that the board committed a gross abuse of discretion in failing to submit the delinquent premises to sale by way of foreclosure.
 

 In his petition to quiet title,'the appellant offered to pay the appellee the amount of money paid by him at the tax sale, together with interest and expenses incurred. One of the appellant’s contentions is based upon the proposition that, by his purchase at the tax sale, Schultz, the appellee,, acquired not a fee simple title, but merely succeeded to the lien of the state for the amount of delinquent taxes. His counsel succinctly state the legal question involved as follows: “Does the purchaser at a forfeited land sale for delinquent taxes obtain merely the lien of the state of Ohio and become the as.signee of the state of Ohio in the amount paid at such forfeited land sale?” In their brief, how
 
 *357
 
 ever, counsel for the appellant expand their attack by claiming that, in this particular case, the operative effect of Section 5718-1, General Code, deprives the appellant of his property in violation of the due process clause of the federal Constitution.
 

 In
 
 Castle
 
 v.
 
 Mason,
 
 91 Ohio St., 296, 110 N. E., 463, Ann. Cas. 1917A, 164, the first proposition of the syllabus reads: “The constitutionality of a law may be determined by its operative effect, though on its face it may be apparently valid.” On page 303, the opinion quotes Mr. Justice Harlan in
 
 Minnesota
 
 v.
 
 Barber,
 
 136 U. S., 313, 319, as saying: “There may be no purpose upon the part of a Legislature to violate the provisions of that instrument, and yet a statute enacted by it, under the forms of law, may, by its necessary operation, be destructive of rights granted or secured by the constitution.” Adverting to the due process clause in connection with the levy and collection of taxes, Mr. Justice Day, in
 
 Leigh
 
 v.
 
 Green,
 
 193 U. S., 79, 87, 48 L. Ed., 623, 24 S. Ct., 390, said:
 

 “The right to levy and collect taxes has always been recognized as one of the supreme powers of the state, essential to its maintenance, and for the enforcement of which the Legislature may resort to such remedies as it chooses, keeping within those which do not impair the constitutional rights of the citizen. Whether property is taken without due process of law depends upon the nature of each particular case.”
 

 In the instant case, can it be maintained that the appellant has been deprived of due process? If there be any invalidity in the proceedings involving the sale of lands for non-payment of taxes, Section 5767, General Code, plainly indicates that a claimant asserting and establishing such invalidity may recover the land sold upon payment to the tax sale purchaser of the amount of taxes and penalties paid by him, in addition to interest and costs. Moreover, the appellant cannot
 
 *358
 
 assert that he has been deprived of his property without due process, since he has had adequate judicial process in an action which he himself invoked, where his plea of invalidity has been adversely determined.
 

 Although the taxes became delinquent in 1931 before the appellant and appellee obtained their respective deeds for .the premises, the statutes applying to the sale of forfeited lands, including Section 5718-1, General Code, did not become effective until October 15, 1931. But the General Assembly is not bound by the retrospective effect of its laws pertaining to the mode and manner of its tax collections. Mr. Gray, in his Limitations of Taxing Power, on page 605, states the general rule as follows:
 

 “The requirement of due process of law does not prevent a state from enacting retrospective laws changing the method of collecting taxes, or laws giving to the state an additional remedy for the collection of delinquent taxes. A delinquent taxpayer has no vested right in an existing mode of collecting taxes. There is no contract between him and the state that the latter will not vary the mode of collection. ’ ’
 

 Counsel for the appellant cite and rely upon statutes formerly in existence in this state which provided, either expressly or by implication, that a purchaser at a forfeited land tax sale secured a lien for taxes rather than a title to the property under an auditor’s deed. However, since the state, -under the rule heretofore stated, may act retrospectively respecting the methods of its tax collection, this case must be disposed of upon the character of the title obtained under a forfeited land sale under statutes as they existed at the time of sale. "Section 5744, General Code, provides in substance that land omitted from foreclosure proceedings gud duly advertised shall be forfeited to the state; and “thénceforth all the right, title, claim, and interest of the former owner or owners thereof, shall be con
 
 *359
 
 sidered as transferred to, and vested in, the state, to be disposed of as the General Assembly may direct.” This section comprises substantially the provisions of an old section of similar import construed in
 
 Kahle
 
 v.
 
 Nisley,
 
 74 Ohio St., 328, 78 N. E., 526, where the syllabus' reads as follows:
 

 “Where, under Section 2899, Revised Statutes, lands have been duly forfeited to the state for the nonpayment of taxes and penalty, a valid sale and conveyance of such lands by the county auditor, extinguishes all previous titles thereto, either legal or equitable, and invests the purchaser with a new and perfect title to said lands', discharged from all previous liens and incumbrances. ’ ’
 

 Section 5762, General Code (114 Ohio Laws, 841), also indicates that the intention of the Legislature is to give to the purchaser of premises at forfeited land sales a title to the premises' rather than a lien for taxes paid. That section reads as follows’:
 

 ‘ ‘ The county auditor on making a sale of a tract of land to any person, under this, chapter, shall give to such purchaser a certificate thereof. On producing or returning to the county auditor the certificate of sale the county auditor, on payment to him by the purchaser, his heirs, or assigns, of the sum of one dollar and twenty-five cents shall execute and deliver to such purchaser, his heirs, or assigns, a deed therefor, in due form, which deed shall be
 
 prima, facie
 
 evidence of title in the purchaser, his heirs, or assigns.”
 

 Conferring upon the purchaser
 
 “prima facie
 
 evidence of title,” must be construed as meaning that if the proceedings' under which the sale of forfeited lands has been made have been legally complied with and no constitutional rights of the owner have been abridged, the title of the purchaser is absolute.
 

 Section 5718-1, General Code (114 Ohio Laws, 835), in force during the taxation proceedings terminating
 
 *360
 
 in the sale of the forfeited premises, reads as follows:
 

 “Before making the certificates provided for in Section 5718 of the General Code, the county auditor shall submit the list of lands on the delinquent list and subject to foreclosure, to a board composed of the president of the board of county commissioners, the county auditor and the county treasurer, and if, after investigation, in their judgment and discretion, such board is of the opinion that such list contains property or properties so certified, which will not bring upon a sale a sufficient amount of money to pay all taxes, assessments and penalties thereon in arrears, together with costs of foreclosure, such board may order the same to be omitted from the foreclosure proceedings, as hereinafter provided; and as to such land so ordered to be omitted, no delinquent land tax certificate shall be made.”
 

 The record discloses that the premises sold for nonpayment of taxes were delinquent after the August settlement in 1931. They were sold at a public sale to the appellee on March 11, 1935, for the sum of $45, he being the highest bidder, the tax delinquencies then amounting to $25.76. Although the valuation of the premises was placed upon the duplicate in 1933 at the sum of $90, that valuation was in the following year increased on the duplicate to the sum of $470. It is upon this feature of the case (a sale of property so valued for the payment of such a small amount of delinquent taxes), that the appellant’s counsel base their argument of arbitrariness and abuse of discretion upon the part of the board in failing to submit the premises for sale at proceedings in foreclosure. The record is silent as to the real value of the premises or the real value of the structure in 1934. The total valuation of $470 shown by the duplicate may not have been the real value. The three-member board, acting under the provisions of Section 5718-1, General Code, apparently was of the
 
 *361
 
 opinion that it was not the real value, and the judgment of the board is, in a measure, supported by the fact that the premises were sold at public sale for the sum of $45. The board certified to the county auditor that, after investigation, in its judgment the property in controversy would not “bring upon sale a sufficient amount of money to pay all taxes, assessments and penalties thereon in arrears, together with costs of foreclosure.”
 

 There may be instances where the disproportion between the actual value of the property and the amount of taxes due is so great that it would be highly inequitable to the owner to have his property sold in the summary manner provided by statute instead of by judicial proceedings in foreclosure where the owner has the advantage of statutory notice. But we find no such disproportion in the present case, or any abuse on the part of the board of the' discretion which the statute authorizes it to exercise. On this record the case of the appellant is one of dubious equity. When he leased the premises from McDonald, he covenanted to pay the taxes upon the leased property. This he did not do. He paid no taxes during the interim between June 28, 1934, and March 11, 1935; whether he knew the lands were advertised as being delinquent and for late,r sale, he does not say.
 

 Finding no prejudicial error committed by the Court of Appeals, its judgment will be affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Matthias, Day, Zimmerman and Myers, JJ., concur.