Malia et al., Appellants, v. Wright, Treas., et al., Appellees.

(No. 1142—Decided June 23, 1947.)

Messrs. *Wilcox & Wilcox* and Mr. *W. G. Stapleton,* for appellants.

*Mr. William G. Wickens,* prosecuting attorney, for appellees Walter J. Wright, Treasurer, and Frank Ayres, Auditor.

*Mr. Frank A. Stetson,* for appellees Arthur Burgess and Clara Burgess.

Hunsicker, J. The facts in this appeal on questions of law are as follows:

In 1938 the board provided for by the then Section 5718-1, General Code, met in the auditor's office in Lorain county, Ohio, and went over the delinquent tax

duplicate, from which it ordered omitted from fore-closure proceedings and forfeited to the state parcels of land—among them the lands in question herein—which in the board's opinion were not worth taxes, penalties, assessments and interest.

No view of the premises was then had, although at least two of the members, with some maps of the allotment in which the lots herein were located, visited the allotment in 1937 or 1938 before the meeting of the board to consider the question of foreclosure or forfeiture.

The testimony indicates that at the meeting the board discussed: The character of the allotment in general, because many other lots in the allotment were on the delinquent list; the location of the lots involved herein; the past experience with similar sales; the nature of the market for real estate in general and vacant lots in particular; and the cost of foreclosure proceedings. The lots herein (three in number) were ordered omitted from foreclosure and forfeited to the state of Ohio, and the statutory procedure was thereafter followed as to forfeiture and sale. The taxes, assessment, penalties and interest due on each lot at the time of forfeiture were $91.85, the tax value for each lot was $120, but on reappraisal in 1945, this was reduced to $60 to $80 per lot. On sale the lots brought a total of $340.

On June 27, 1941, Westlaklan, Inc., the owner at the time of forfeiture, sold the lots here in question to the appellants, although at the time of this sale the lots stood in the name of the state of Ohio as a result of the forfeiture proceedings. On June 28, 1941, appellants entered into a Whittemore delinquent tax agreement with the county treasurer (No. 6405), paying the taxes for the then current year and 10% of delinquency.

This undertaking by the Malias was defaulted in

1942, payments were made on May 25, 1943, and on July 21, 1944, but the undertaking was marked defaulted again on August 20, 1945, although the property had been sold at forfeiture sale on June 28, 1945.

Mrs. Malia testified she wrote to the county treasurer for her tax bills and when they were received she would come to Elyria and pay them, but she did admit that the 1942 tax and purported Whittemore installment had not been paid, and that other semi-annual installments of current taxes had not been paid.

In October, 1945, Mrs. Malia inquired of the county treasurer the amount of tax, and was informed the lots had been sold. She also testified that on their first tax bill and those subsequent thereto, and also on the Whittemore undertaking, the property stood in the name of the state of Ohio; and although she did not know exactly what that meant, she knew it was forfeited land; yet she made no inquiry concerning the ownership being in the state of Ohio.

The action to set the sale aside was then filed on October 30, 1945, and from a judgment adverse to the appellants, this appeal is taken. Seven assignments of error are presented, which raise two questions:

First, was the forfeiture to the state of Ohio and omission from the tax foreclosure list, as made by the board in 1938, unlawful and contrary to law?

Second, did the Whittemore undertaking No. 6405 that was entered into by the appellants and the county treasurer operate as a stay of the tax forfeiture sale proceedings, thereby rendering unlawful and void the sale of the lots by the auditor on June 28, 1945?

Section 5718-1, General Code, as effective in 1938, provided as follows:

"Before making the certificates provided for in section 5718 of the General Code, the county auditor shall submit the list of lands on the delinquent list and subject to foreclosure, to a board composed of

the president of the board of county commissioners, the county auditor and the county treasurer, and if, *after investigation,* in their judgment and discretion, such board is of the opinion that such list contains property or properties so certified which will not bring upon a sale a sufficient amount of money to pay all taxes, assessments and penalties thereon in arrears, together with costs of foreclosure, such board may order the same to be omitted from the foreclosure proceedings as herein provided; and as to such land so ordered to be omitted, no delinquent land tax certificate shall be made." (Italics ours.)

In considering that section, we are met with the phrase "after investigation" and the opinion of this court in the case of *Taylor* v. *Ebert,* 76 Ohio App., 177, 63 N. E. (2d), 443. In that case, land upon which there was a tax delinquency of approximately $30, but which was apprr 'sed for tax purposes at $430, was ordered forfeited, in pursuance of a rule of the board that large parcels of land should be foreclosed, while small parcels should be forfeited. There was an abuse of discretion by the board, and the following of an arbitrary rule, not provided by statute.

In the case of *Urban* v. *Taylor,* 20 Ohio Opinions, 508, 6 Ohio Supp., 225, there was a tax delinquency on two tracts of land which, with penalties and interest, amounted to $85.49. One of the tracts had a dwelling and outbuildings on it, and both together were valued at $1,000, yet were sold on forfeiture for the sum of $85.49. There was no investigation and no discretion exercised by the board; the court saying, at page 511 of the opinion:

"The plain provision of the law is that the board use their judgment and discretion, *after investigation* * * *. Admittedly no investigation was made and, therefore, no discretion could be exercised."

The facts in the instant case present, as they apply

to the matter of investigation, much different circumstances. The tax delinquency, including penalties, assessments and interest, amounted to $91.85 on each lot, which, together with court costs of foreclosure of $50, would require a sale to be made at $141.85 per lot. At the forfeiture sale the three lots sold for a total of $340. The board, from its past experience, its knowledge of the real estate market, the previous visit of two of the members to the allotment, the position in the allotment of these lots and the experience with foreclosure sales in the allotment, and the facts disclosed by the tax reports, determined that these lands should be omitted from the foreclosure list.

From the consideration of these facts, we cannot say that the board abused its discretion or that it failed to make an investigation when the lands were ordered forfeited. See, *Cech* v. *Schultz,* 132 Ohio St., 353, 7 N. E. (2d), 557.

Coming now to the effect of the Whittemore Act in the instant case, that act (Section 2672-1 *et seq.,* General Code) became effective on March 22, 1939, and provided for the payment of delinquent taxes in ten equal installments.

Appellants received a copy of a purported undertaking under the Whittemore Act with respect to the lands in question herein, showing the lands to be owned by the state of Ohio, but neither the copy nor the original thereof had been signed by anyone. The first payment was made and noted on both the original in the treasurer's office and the copy which was in possession of appellants. Default in that purported undertaking occurred in 1942, and was noted on the original as follows: "Defaulted July 30, 1942."

It should be noted at this point that Section 2672-3, General Code, provides that the owner of real estate, or "the holder of a lien thereon," may enter into a written undertaking to pay the delinquent taxes, and

"so long as such undertaking shall continue to be performed, the lands. * * * shall not be entered on the foreclosure list." Section 2672-4, General Code, provides that the "person electing to pay delinquent taxes * * * shall thereby undertake in his own behalf and on behalf of all subsequent grantees." Section 2672-6, General Code, provides in part:

"In case of any default in the payments under the undertaking provided for in this act, the county treasurer shall enter on the duplicate the date and the fact of such default. Thereupon such undertaking shall be canceled of record in the office of the treasurer and a certificate of such cancellation shall be given to the county auditor, and such officer * * * shall proceed to enforce the payment and collection of such delinquent taxes * * * in the manner prescribed by the permanent law of ·this state therefor * * *."

Nowhere in ·that act is it provided that an undertaking may be entered into with respect to lands already forfeited to the state. The Legislature having failed to include forfeited lands within the terms of the "Whittemore Act," the claimed undertaking herein did not operate as a stay of the forfeiture sale proceedings.

The forfeiture of the lands under consideration being regular, and there being no statutory authority for entering into a "Whittemore" undertaking under Section 2672-1 et seq., General Code, for forfeited lands, such purported undertaking does not accomplish a stay of the sale of such lands.

We have examined the other claimed errors and find none prejudicial to the appellants.

The judgment of the Common Pleas Court. is affirmed.

*Judgment affirmed.*

Doyle, P. J., and Stevens J., concur.